## John Becker *v.* Pennsylvania Railroad Company, Appellant.

*Contributory negligence—Binding instructions.*

To warrant binding instructions in favor of the defendant on the ground of contributory negligence there must be no doubt or uncertainty about the facts attending the accident.

" *Stop, look and listen"—Province of court and jury.*

The rule of "stop, look and listen" as applied to grade crossings has been defined in clear and expressive language in a long line of cases, and the degree of caution imposed on the traveler is well understood. The difficulty arises in its application to the cases as they are presented with their varying environments, but it is well settled that where there is a doubt raised by the evidence as to the necessary facts or the inferences to be drawn from them, the case is for the jury and not for the court.

The case at bar was rightly left to the jury, in a clear and adequate charge, it being apparent that the facts were contested, the evidence conflicting and the inferences to be drawn not at all one-sided.

Argued Dec. 15, 1898. Appeal, No. 176, Oct. T., 1898, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1895, No. 715, on verdict for plaintiff. Before RICE, P. J., ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by ORLADY, J.

Trespass for personal injuries.   Before PENNYPACKER, P. J.

It appears from the evidence that plaintiff was injured while crossing a grade crossing in a wagon.   The case turned largely on the question of plaintiff's contributory negligence.   Plaintiff's testimony upon this subject was as follows:

" Q. You said you stopped six or seven feet from the crossing; do you mean your horse's head was that distance from the crossing to where you were sitting?   A. The horse's head. Q. At that point you looked up?   A. Yes.   Q. Do I understand you to say when you were looking out you could see fifty feet down the track to your left as far as the bushes? A. About fifty or sixty feet; about that.   Q. So, that from the place you stopped you say you could see fifty or sixty feet down the track?   A. Yes, sir.   Q. You saw nothing come? A. No; I couldn't see any further down on account of the smoke and steam.   Q. The engine was on the track further away from you?   A. Yes, sir. . . . Q. When you started your horse, after looking this way, did you keep looking up the track? A. When I started my horse I sat back on that seat; I couldn't see nothing; I sat back.   Q. You had the edge of the wagon between you and the track, sitting back in the wagon?   A. Sitting up where the seat was, inside the wagon.   Q. And the sides of the wagon came out opposite you, as you have said? A. Yes, sir.   Q. Did you go on faster?   A. I drove a little faster.   Q. You went right on?   A. I went right on.   Q. You got your horse over the track and the front wheel of your wagon?   A. Yes, sir.   Q. You heard the whistle?   A. The whistle blew twice and the bell rang.   Q. Then the wheels of your wagon were struck?   A. I looked out; I saw the engine alongside of me.   At the same time I got struck.   Q. You say that you stopped six or seven feet away from the north track? A. Yes, sir.   Q. I want you to understand it, and the question is, whether the point at which you stopped was north or south of the edge of the bank?   A. The end of the bank—I stopped south.   Q. South of the end of the bank?   A. Yes, sir.   Q. Now, from that point where you stopped, how far could you see to the eastward?   A. I could see about fifty or sixty feet down. Q. What sort of a wagon was it?   A. Like a milk wagon. Q. What sort of a cover did it have on it?   A. A black cover. . . . . Q. The seat was just inside the cover?   A. The seat

was right inside the wagon. Q. Or inside the cover? A. Yes. Q. The cover came out? A. Yes; I was inside the wagon, sitting across the wagon; I was seated; I was right in front of the wagon inside. Q. You had some of the cover on each side? A. The cover was on each side. Q. In order to see out of the wagon, you have to look around the cover of the wagon? A. I have to do that."

The court in its charge reviewed the testimony as follows:

If you should find that the plaintiff did stop, look and listen, you are still confronted with the broad question as to whether or not, even then, he exercised due and proper care. It would be of no use to look and listen unless he obeyed the results which he ascertained from such observation. If he was bound to see, and ought to have seen, the engine as it was coming, and nevertheless took the risk of endeavoring to cross when there was danger in so doing, the plaintiff is not entitled to recover. You must, however, look at all of the facts and endeavor to solve that problem as to whether or not the plaintiff was using the due and proper care which was required.

The situation appears to be about this: The track was a straight track. To his left, on the east, from which direction the engine came, was a bank about ten feet in height. At the distance of sixty feet were some bushes and weeds and ivy vines, and farther beyond that, at a distance which has been variously described from about 150 to 500 feet, were some willow trees growing, and it would seem from the testimony that the branches of these trees overhung the track. At the distance of sixty feet to the eastward from the crossing there was standing an engine, and that engine was blowing off steam, and the plaintiff says smoke, and the smoke, to some extent, he says, obstructed the view.

Now, in the first place, did the plaintiff stop at the proper place? That is also a question which you are called upon to determine. He says that he stopped at a point six or seven feet from the track. There were two of the witnesses for the plaintiff who testify as to their familiarity with the crossing, and who state that they always stopped at a point some fifty yards back of the crossing.

Mr. Adams, the engineer, called by the defense, testifies that

twenty feet back from the crossing a man could see a distance to the eastward about 250 or 300 feet, and that fourteen feet back from the crossing he could see 1,200 feet; this bearing upon the question as to whether or not the plaintiff was bound to see that engine as it approached.

Mr. Hoffner, a witness for the plaintiff, as to whom I have already spoken to you, says that when he saw the engine approaching it was at a distance of about twenty-five yards. He first said thirty-five yards, and afterwards he said twenty-five yards, and on cross-examination he said that when he saw the engine at that point the plaintiff was just below his gate. If that can be accepted as entirely accurate, then the plaintiff ought not to recover, because it is the case of a man going ahead in the face of an engine which was close at hand, and which he was bound to see and ought to have seen. But there is a query raised by the testimony of Mr. Hoffner. In his testimony in chief he described the scene in this way: He said that he saw the plaintiff, and that then he went along until he disappeared from view. There was a willow tree, or a bush of some kind, which obstructed his view, and he saw this wagon going along until it disappeared outside of his line of vision. Then he says, "And next I saw the locomotive," which he describes at the distance I have told you, thirty-five to twenty-five yards. Now, that would seem to indicate an interval of time between the disappearance of the plaintiff from view and the appearance of the locomotive coming from the eastward.

These are the matters of fact which I have felt that I ought to call your attention to, because all of them are material. You are, from the testimony that has been presented, to solve those difficult questions of fact. If you should find that there was negligence on the part of the defendant which led to this accident, and no contributory negligence upon the part of the plaintiff, you will then be met with the question of damages.

Defendant presented four points, which points and answers were as follows:

[1. The evidence of the plaintiff's witnesses shows that at a point fourteen feet from the crossing the plaintiff could and did see a distance of sixty feet down the track, and that as he approached the crossing from that point the range of view gradually increased until a view could be had for a distance of a

mile; and that the plaintiff, after stopping and looking at the said point fourteen feet from the crossing, did not again look, but sat back in a covered wagon, where he could not see up the track, and drove upon the crossing, where the wagon was struck upon the first track. Under these circumstances the plaintiff was guilty of contributory negligence, and the verdict of the jury must be for the defendant. *Answer:* I decline that.] [1]

[2. The testimony of the witness Hoffner, called by the plaintiff, shows that he saw the train at a point seventy-five feet from the crossing at the time when the plaintiff was from thirty to forty feet from the crossing, and that he saw the train for a space of five seconds coming from the point seventy-five feet from the crossing, until he lost sight of it at a point thirty feet from the crossing, and that he saw the plaintiff drive from the said point on the road thirty to forty feet from the crossing to a point fifteen feet from the crossing, where he lost sight of him. This testimony, taken with that of the plaintiff and the other witnesses, that from a point fifteen feet from the crossing the train could be seen sixty feet away, and for the entire distance from that point to the crossing, shows that if the plaintiff looked in the direction in which the train was approaching when he, the plaintiff, was fourteen feet from the crossing on the road, he must necessarily have seen it. His failure to see the train under such circumstances, and to stop before going upon the crossing, was contributory negligence upon his part, and the verdict of the jury should be for the defendant. *Answer:* I decline that.] [2]

[3. The plaintiff was guilty of contributory negligence in driving upon the crossing under the circumstances disclosed by all the evidence in the case, and the verdict of the jury should be for the defendant. *Answer:* I decline that.] [3]

[4. Under all the evidence the verdict of the jury should be for the defendant. *Answer:* I decline that.] [4]

I have declined all of these points, because each one of them asks me to take the case away from you. I leave it to you, to be determined upon the facts under the instructions which have been given to you.

On the question of defendant's conduct in running its train, the court charged the jury as follows:

[It appears from the testimony that, ordinarily, the engineer is looking out from the front for obstacles which may be in the way, and the flagman is put on the rear so as to give warning to those who may be coming up in that direction. But it appears that upon this occasion, when the car was running backwards, there was nobody on what was then the front of the train.] [5]

Verdict and judgment for plaintiff for $800. Defendant appealed.

*Errors assigned* were (1–4) refusal of defendant's points, reciting same. (5) To portion of the general charge, reciting same.

*John Hampton Barnes*, with him *Geo. Tucker Bispham*, for appellant.—It is upon the facts as stated by the court that defendant contends that it was entitled to have a binding instruction to find in its favor upon the ground of the contributory negligence of the plaintiff: Railroad Co. v. Mooney, 126 Pa. 244; Hovenden v. Railroad Co., 180 Pa. 244; Myers v. Railroad Co., 150 Pa. 386; Gangawer v. Railroad Co., 168 Pa. 265; Beynon v. Railroad Co., 168 Pa. 642; Gleim v. Harris, 181 Pa. 387.

If the smoke prevented a view it was as much an obstruction as any other object and it was the duty of the traveler to wait until the dust and smoke allowed him to see his way: Hovenden v. Railroad Co., 180 Pa. 244.

*Maxwell Stevenson*, for appellee.—If it is seriously contended that the plaintiff below was guilty of contributory negligence because he failed to look after he started his horse over the six or seven feet before reaching the track, we think the ruling in Penna. R. Co. v. Garvey, 108 Pa. 369, answers that point.

If, on the whole evidence on behalf of the plaintiff, his own testimony is overthrown by that of his own witness in such number and weight that the court could not support a verdict in his favor, then it would become the duty of the court to direct a nonsuit or a verdict. But such case should be clear and without doubt. If there is a doubt, it must go to the jury: Kohler v. Railroad Co., 135 Pa. 346.

Where the facts are uncontested or the inference of negligence the only one that can be drawn, the court must pronounce the result as a matter of law; but where the facts are in dispute, or the inference from them open to debate, they must go to the jury: Gray v. Railroad, 172 Pa. 383; Davidson v. Railroad Co., 171 Pa. 522.

Every case is governed wholly by its circumstances, and these circumstances must, of necessity, be shown by the evidence.

The rights and duties of travelers using a highway are mutual, reciprocal and equal; each must use ordinary care to avoid injury: Penna. R. Co. v. Goodman, 62 Pa. 329.

Extraordinary precautions should be taken if a train or an engine is to be backed over a crossing: Patterson on Railway Accident Law, sec. 171.

OPINION BY ORLADY, J., March 23, 1899:

This case was properly described by the learned trial judge in the first sentence of the charge to the jury, viz: " The case that you have before you to decide is one which raises many questions of fact, and it is one about which you will have difficulty in reaching a conclusion." The defendant contends that, under the circumstances disclosed by all the evidence in the case, the plaintiff was guilty of contributory negligence in driving upon the crossing, and that the court should have directed the jury to return a verdict in its favor.

To warrant such a direction there must be no doubt or uncertainty about the facts attending the accident in order to justify the courts in treating the question of contributory negligence as one of law: Davidson v. Railway Co., 171 Pa. 522. In Ely v. Railway, 158 Pa. 233, the legal duty of persons driving over a grade crossing is defined in clear and expressive language, and is repeated in Gray v. Railroad, 172 Pa. 383, viz: " The cases beginning with Railroad v. Heileman, 49 Pa. 60, and Railroad v. Beale, 73 Pa. 504, have established not only the rule that the traveler about to cross a railroad track must stop, look, and listen, as an absolute and unbending rule of law founded in public policy for the protection of passengers in railroad trains as much as for travelers on the common highways, but also that such stopping, looking, and

listening must not be merely nominal and perfunctory, but substantial, careful, and adopted in good faith for the accomplishment of the end in view. The traveler must stop and look where he can see, and he will not be allowed to say that he did so, when the circumstances make it plain that the proper exercise of his senses must have shown him the danger." The rule of law is clear and definite, and must be followed. When one is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop, look, and listen, must be conclusively presumed to have disregarded that rule of law and common prudence, and to have gone negligently into an obvious danger: Myers v. B. & O. R. R. Co., 150 Pa. 386. To apply this rule to the cases as they are presented with their varying environments is often difficult, and where there is a doubt raised by the evidence as to the necessary facts, or the inferences to be drawn from them, the case is for the jury and not for the court. This plaintiff testified that in attempting to pass over this grade crossing, which was over a three track railroad, he came to a full stop when the horse's head was six or seven feet from the first track, and then leaned forward, looked in both directions along the line of the railroad, and did not see nor hear any approaching engine or train; he then sat back in his wagon and started to cross at a faster gait than he had been driving, and when he had nearly cleared the crossing the rear part of his wagon was struck by a shifting engine which was running with the tank end towards him.

The speed of the train; the use of appropriate signals; the view of the track being obstructed by trees, vines, and a train, which was standing on another track a short distance from the crossing; the place he selected so as to see and hear; and the subsequent removal of objects, alleged to have interfered with a fair view of the tracks, were each fully investigated and each thoroughly pressed and disputed. The plaintiff's testimony, if believed, made out a case clear of contributory negligence, and the fact that it was to some extent impaired by one of his own witnesses would not justify the court in ignoring it altogether.

The decree of contradiction must be such as to make it manifest that the plaintiff is wilfully misstating the facts, or that he is entirely mistaken in his recollection of them, or, as was said

in Kohler v. Railroad Co., 135 Pa. 357, "If, on the whole evidence in behalf of the plaintiff, his own testimony is overthrown by that of his own witnesses, in such number and weight that the court could not support a verdict in his favor, then it would become the duty of the court to direct a nonsuit or a verdict. But such a case should be clear and without doubt." This plaintiff had a right to cross, and he had almost passed over in safety; he had complied with the mandate to stop, look, and listen; he was struck as he was leaving, not approaching, the crossing; and his cause is materially aided by the defendant's witnesses. The fair analysis of that side of the case tends to show that the conductor did not see him "until the engine came against the wagon;" the engineer did not see him until notified by the fireman that they were "pretty near the road crossing, a few feet from it;" the fireman could not see owing to the tank and the coal upon it, and when within ten feet of the crossing he "looked out and hallooed to the engineer to stop immediately;" the division engineer "thought the plaintiff could have seen as well from where he did stop as he probably could from anywhere else." Although it was clear daylight and the track a straight one, the persons who controlled the engine did not notice the traveler until they were within a few feet of the crossing. The facts were contested, the evidence was conflicting, and the inferences to be drawn were not at all one-sided. The case was rightly submitted to the jury in a clear and adequate charge which contained most careful instructions as to the law.

The judgment is affirmed.