## Girton *v.* Lehigh Valley Railroad Company.

*Negligence—Railroads—Crossing tracks at station.*

The rule to " stop, look and listen " is not always applicable to passengers leaving a train and crossing a track to reach the depot at the point of destination. There are duties which spring from the relation existing between the carrier and its passengers. It is the duty of the company to provide for the safe receiving and discharge of passengers. It is bound to exercise the strictest diligence not only in carrying them to their destination, but also in setting them down safely, if human care and foresight can do so.

It is not necessarily negligent for a railroad company to run a train into a station where another train is receiving or discharging passengers, but circumstances may make it so, and whether running an express train at a high rate of speed into a station at approximately the moment of time a local train is discharging passengers, can be called negligence, is for the jury to say.

Failure to look for trains when crossing a track in passing from train to station is not necessarily negligent. The circumstances of the case must determine whether this is so or not. The railroad company is bound to provide a way by which passengers may pass in safety. If the way provided crosses a track, no train should be permitted to pass over at the point where passengers are required to cross it while a train on the opposite track is receiving and discharging passengers.

In an action against a railroad company to recover damages for the death of a young child, a verdict and judgment for plaintiff will be sustained where the evidence tends to show that the mother and the child alighted from a train on the far track from a station ; that between the place where the plaintiff and child alighted and the station platform the roadway had been filled with cinders and ashes, and that this was the way provided by the company for passengers to cross the track ; that plaintiff saw other passengers directed by the conductor crossing in this way ; that plaintiff stopped and looked before she went upon the first track and also between the tracks, and seeing nothing crossed over, and when she was about stepping on the station platform the child was struck by a fast express train and killed.

Argued Jan. 15, 1901. Appeal, No. 25, Jan. T., 1901, by defendant, from judgment of C. P. Wyoming Co., Oct. T.,

1899, No. 130, on verdict for plaintiff in case of Lorenzo E. Girton and Maud Girton v. The Lehigh Valley Railroad Company.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Trespass to recover damages for death of child.

The facts appear by the opinion of the court.

The court submitted the case to the jury.

Verdict and judgment for plaintiff for $1,000.   Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*F. W. Wheaton* and *Charles E. Terry*, for appellant.—Maud R. Girton, in whose custody deceased was at the time, with full knowledge of a safe way of egress from defendant's premises, voluntarily chose a way of known danger, without which the injury could not have happened: Hill v. Twp. of Tionesta, 146 Pa. 11; Haven v. Pittsburg & Allegheny Bridge Co., 151 Pa. 620; Delaware, Lackawanna & Western R. R. Co. v. Cadow, 120 Pa. 559; Dell v. Phillips Glass Co., 169 Pa. 554; Penna. R. R. Co. v. Zebe, 37 Pa. 423; Flanagan v. Phila., etc., R. R. Co., 181 Pa. 237; Drake v. Penna. R. R. Co., 137 Pa. 352; Sullivan v. P. & R. R. R. Co., 30 Pa. 238.

The only two inferences from the undisputed testimony were, that Mrs. Girton either did not stop, look and listen, or that if she did she must have seen the approaching train, and knowingly attempted to cross in front of it, in full view, and the court therefore should have charged as matter of law that she was guilty of contributory negligence, and withdrawn the case from the jury: Baker v. Penna. R. R. Co., 182 Pa. 336; Moss v. Phila. Traction Co., 180 Pa. 390; Smith v. Holmesburg, etc., Ry. Co., 187 Pa. 453; Lees v. P. & R. R. R. Co., 154 Pa. 46.

Mrs. Girton and the boy were mere intruders upon the tracks of the company, towards whom no duty was owed, except that which is owed to trespassers, and there being no evidence of wanton and malicious injury, the plaintiffs were not entitled to recover: Gillis v. Penna. R. R. Co., 59 Pa. 129; B. & O. R. R. Co. v. Schwindling, 101 Pa. 261, Sturgis v. Detroit, etc., R. R. Co., 72 Mich. 619; P. & R. R. R. Co. v. Hummell,

44 Pa. 375 ; Redigan v. Boston & Maine R. R. Co., 155 Mass. 44; Drake v. Penna. R. R. Co., 137 Pa. 352; Johnson v. Boston & Maine R. R. Co., 125 Mass. 75 ; Bancroft v. Boston & Worcester R. R. Corp., 97 Mass. 275 ; Johnson v. Reading City Pass. Ry. Co., 160 Pa. 647 ; Boro. of Birmingham v. Dorer, 3 Brewst. 69.

*Paul J. Sherwood*, with him *E. J. Jorden*, for appellees.—If the way provided is across a track, a passenger may rely upon the performance of its duty by the company to keep the track clear while passengers are in the act of passing between the train and the station. The highest vigilance is required at such places: Betts v. Lehigh Valley R. R. Co., 191 Pa. 575 ; Flanagan v. Phila., etc., R. R. Co., 181 Pa. 237 ; Penna. R. R. Co. v. Aspell, 23 Pa. 147 ; Penna. R. R. Co. v. White, 88 Pa. 327.

The contention that Mrs. Girton was a trespasser while crossing to the depot is without merit: Betts v. Lehigh Valley R. R. Co., 191 Pa. 575 ; Flanagan v. Phila., etc., R. R. Co., 181 Pa. 241 ; Delaware, Lackawanna & Western R. R. Co. v. Jones, 128 Pa. 308 ; Gaynor v. Old Colony, etc., R. R. Co., 100 Mass. 208 ; Warren v. Fitchburg R. R. Co., 8 Allen, 227 ; Caswell v. Boston, etc., R. R. Co., 98 Mass. 194 ; Mayo v. Boston & Maine R. R. Co., 104 Mass. 137 ; Parsons v. New York Central & Hudson River R. R. Co., 113 N. Y. 355.

OPINION BY ORLADY, J., May 23, 1901 :

The plaintiffs brought this action of trespass to recover damages for causing the death of their minor child. The mother and child had been to Wilkes-Barre and had returned, on their way to their home, to Ransom station of the defendant company. At this station the defendants own and operate a double track railroad, on the west side of which is a depot with a waiting room and a plank platform along the track 196 feet in length. On the east side there is no building, shelter, or other convenience for use of passengers except a platform 145 feet in length, made of ashes and cinders which are held in place by plank set on edge. The tracks are four feet eight inches apart and the platforms about twenty inches above the rails. Between the station house and the opposite platform the roadway is

covered with cinders and ashes. A public road crosses the railroad twenty-eight feet north of the station house.

When train No. 95 arrived at Ransom on July 24, 1899, ten passengers were discharged from the east-bound train and one was received. Of those discharged at least three got off between the first and second car on the depot or west side of the train and walked across the east-bound track to the depot, and these the conductor notified "to be careful, that the Black Diamond Express would be along at any moment."

The plaintiff, Mrs. Girton, was assisted by a brakeman to alight from the front platform of the second car to the ash-cinder platform on the east side of the tracks. She had with her her son Floyd Girton aged six years and a number of bundles. She testified that after the train No. 95 had pulled away about a car length, it being a very warm day and there being no shelter from the sun's heat except the depot, she started to cross the tracks to go to the depot to meet her husband whom she expected, and who in fact arrived a few minutes later to assist them to their home on the opposite side of the river about one mile and a half from the station. She also testified that she looked up and down the west-bound track and saw only the receding train; she then started to cross that track, and when between the tracks she stopped and looked up and down the east-bound track but did not see any train; she then started forward with the child close by her side, and when stepping to the platform at the depot, the child, who was immediately behind her within the rails of the track nearer the depot, was run over and killed by the "Black Diamond Express" which passed at that moment. There is a curve in the roadbed a distance from the station in the direction from which the express train came, and the distance from the place where the accident occurred to a point where the engine of the express train would be visible is asserted by the plaintiffs' witnesses, after actual measurement, to be 510 feet, but as positively declared by the civil engineer of the defendant company to be 821 feet. During the trial, the jury visited the scene of the accident and had a personal view of the roadbed, the space designated as a "path" between the platforms, and the surrounding objects mentioned by the witnesses. The engineer of the "Black Diamond Express" testified that train No. 95, on which the plaintiff was a pas-

senger, was due at Ranson station at 5:17 P. M.; that his express train would pass that station, if on schedule time, at 5:11 P. M., but the express train was nine or ten minutes late on that day, was running at a speed of between fifty and sixty miles per hour, and arrived at Ransom station at 5:19 P. M. There was evidence tending to show that train No. 95 was slow in getting to the station that day. Several witnesses for plaintiff testified that the express engine sounded only a danger whistle for the public road crossing, but the engineer of that train testified that he gave three separate whistles beginning at 1,500 feet from the station. Witnesses for plaintiff testified that the engines of the two trains passed each other opposite to the tool house which was 250 feet from the depot, and witnesses for the defendant testified that they passed at least 300 feet farther north of the same point.

The station grounds were not inclosed, and there were no gates or guards separating the tracks. One witness for plaintiff testified as follows: " Q. Where the ash crossing was located, was that the usual and customary place for travelers to go and come from the depot to the train on the west-bound track?  A. Yes, sir. Q. What provision has the company for travelers to get across the track at this point, if any? A. There are ashes and gravel filled in between the tracks, leveling up the tracks for crossing." The civil engineer of the defendant company testified, viz: " Q. What is the cinder platform for? A. For the discharge of passengers, I guess. There is where passengers are helped on and off the train. Q. Then there is a cinder path where they go across to the station? A. Yes, sir; a path."

The public road grade crossing was not connected with either platform, and there is no evidence to show that it was any part of the defendant's station plan, or that it was designed or intended for use, or used by their passengers as an exit from trains or depot.

The conductor of train No. 95, in plain view of Mrs. Girton, aided passengers to alight from the depot side of his train at a time when a through express was momentarily expected to occupy the track that they were obliged to cross in order to reach the depot. Under the uncontradicted testimony in this case, it must be held that this passageway between the plat-

forms was there by the company's act, and that by sufferance, use, and appearance a person of reasonable judgment would conclude that it was a way to the station house.   Covering the tracks with cinder and ash at this point, and permitting passengers to use it as a way for going to and from the depot, was a tacit invitation by the company to passengers to use this means of reaching the train and depot.   In the use of such a way Mrs. Girton could not be held to be a trespasser.   Her engagement with her husband was at the depot upon the arrival of the train.   She was not put to a choice of ways, as the one nearest at hand and most direct had the apparent approval of the railroad company, and was safe except for the passing of trains over it.   She was cumbered with a number of bundles and a small child, and in adopting the means prepared by the company, which was used by other passengers under the guiding care of the conductor of the train, she was bound to use only care proportionate to her surroundings. Whether she was an intruder or loiterer on the premises, or was moving with reasonable dispatch and care to the depot, was for the jury to determine: Breunniger v. Penna. R. R. Co., 9 Pa. Superior Ct. 464; Davidson v. Lake Shore, etc. Ry. Co., 179 Pa. 227; Becker v. Penna. R. R. Co., 10 Pa. Superior Ct. 19.

There is nothing in the evidence to show the existence of any rule by the company on the subject of trains passing at stations, but independent of any rule on the subject, in view of this verdict which is based on sufficient testimony of the plaintiff's witnesses, Mrs. Girton had a right to reasonably assume, under the circumstances, that she could safely cross the track without fear of a train passing while her train was there, or for such reasonable time thereafter as would enable her to reach the depot: Penna. R. R. Co. v. White, 88 Pa. 327; Kohler v. Penna. R. R. Co., 135 Pa. 346; Flanagan v. Phila. etc. R. R. Co., 181 Pa. 237; Chicago, M. & St. P. Ry. Co. v. Lowell, 151 U. S. 209; 38 L. Co-op. ed. 131.   It is not necessarily negligent for a railroad company to run a train into a station where another train is receiving or discharging passengers, but circumstances may make it so, and whether running this express train, at its high rate of speed, into the station, at approximately the moment of time the local train was there could be

called negligent, was for the jury to say. It is held in Van Ostran v. New York Central and Hudson River R. R. Co., 35 Hun, 590, in which many authorities are cited in support of the doctrine, that the current of authority is to the effect that failure to look for trains when crossing a track in passing from train to station is not necessarily negligent. The circumstances of the case must determine whether it is so or not. There is a plain difference between the case of a traveler on a highway about to cross a railroad and the case of a passenger entitled to safe conduct to and from the company's station. The railroad company is bound to provide a way by which passengers may pass in safety. If the way provided crosses a track, no train should be permitted to pass over it at the point where passengers are required to cross it while a train on the opposite track is receiving and discharging passengers: Atlantic City R. R. Co. v. Goodin, 62 N. J. L. 394; s. c., 45 L. R. A. 671; Klein v. Jewett, 26 N. J. Eq. 474. Our own cases of Penna. R. R. Co. v. White, and Flanagan v. P. W. & B. R. R. Co., 181 Pa. 237, are in line with the same doctrine.

" This rule (to stop, look, and listen) is not always applicable to passengers leaving a train and crossing the track to reach the depot at the point of destination. There are duties which spring from the relation existing between the carrier and its passengers. It is the duty of the company to provide for the safe receiving and discharging of passengers. It is bound to exercise the strictest vigilance, not only in carrying them to their destination, but also in setting them down safely, if human care and foresight can do so: Penna. R. R. Co. v. Aspell, 23 Pa. 147; " Betts v. Lehigh Valley R. R. Co., 191 Pa. 575.

The duty of a railroad company, as a carrier of passengers, does not end when the passenger is safely carried to the place of his destination. The company must also provide safe means for access to and from its station for the use of passengers, and passengers have a right to assume that the means of access provided are reasonably safe: Delaware, Lackawanna & Western R. R. Co. v. Trautwein, 23 Vroom 169; s. c., 7 L. R. A. 435. Nor does the fact that Mrs. Girton waited until the train pulled away and then passed over the tracks change the case. She was where she had a right to be, and where she had a right to assume that she would have a reasonably safe passage over the

way prepared for her use and a reasonable time and opportunity to get to the depot, and leave the premises by the usual and proper route in such cases.

The depot and connected grounds, visited by coming and going passengers, should be fitted up with a careful regard to their comfort and safety. The approaches, the tracks around the platforms, places for entering and leaving the cars, and every spot likely to be visited by passengers when waiting for or departing upon trains should be made safe and kept so, and at reasonable times should be lighted; passengers not in fault and injured through a neglect of this duty may have compensation: Bishop on Non-Contract Law, sec. 1086; Lucas v. Pennsylvania Co., 120 Ind. 206; Pennsylvania Co. v. Marien, 123 Ind. 415; s. c., 7 L. R. A. 687. The defendant was bound to keep in safe condition for use of its passengers all that part of the station and platforms where passengers were expressly or impliedly invited to go. Having safely alighted on the platform and seeing other passengers use the crossing over the tracks as a means to reach the depot, under the evidence in this case, she could not be held to be a trespasser, or licensee, nor guilty of contributory negligence in entering upon the way which was arranged by the company as a part of their station plan to reach the depot.

After starting to cross at this usual and customary place— as determined by this verdict—her conduct and her surrounding circumstances fix the measure of her duty, in regard to which no general and inflexible rule is applicable. In each case all the circumstances must be considered in determining whether there was contributory negligence or want of ordinary care. The court unqualifiedly affirmed the defendant's points, viz: "3. If the jury believe that Maud R. Girton, mother of Floyd Girton, stepped upon the east-bound track without stopping, looking, and listening for an approaching train, then she was guilty of contributory negligence, and plaintiffs cannot recover in this case. 4. If the jury believe that Maud R. Girton, mother of Floyd Girton, stopped, looked, and listened between the east and west-bound tracks at a point where she could see or hear the 'Black Diamond Express' approaching, and then stepped on the east-bound track so that she and the boy were struck before being able to get across the rails, then she was

143, (1901).                    Opinion of the Court.

guilty of contributory negligence and plaintiffs cannot recover."
In answer to the fourth point the trial judge added, "If she
stopped, looked, and listened at a point where she could see
the 'Black Diamond' approaching, and did see it, or if it was
in sight so that she ought to have seen it at the time she stopped,
looked, and listened, then we affirm the point.". The same in-
struction was given in the general charge and was more favor-
able to the defendant than is required by the decisions.    It was
a case for the jury and was fairly submitted under adequate
instructions.    The Supreme court has recently affirmed a judg-
ment recovered by the father for injuries sustained by the wife,
under the same facts.    Opinion filed April 22, 1901.    199 Pa.
147.

The judgment is affirmed.