## Farr *v.* Philadelphia & Reading Railway, Appellant.

*Negligence—Railroads—Passengers—Alighting from train.*

In an action against a railroad company to recover damages for personal injuries, it appeared that the plaintiff, an old man of eighty years became a passenger to be carried to a branch terminal station on defendant's railroad. Just before arriving at his destination he was obliged to go to the water-closet in the car to relieve his bladder. He came out of the closet as soon as he could adjust his clothing "probably one or two minutes after the train stopped," at which time the train was standing still at the terminal station. All the passengers and employees had left the train; in the words of the plaintiff "there was not a soul in sight." As he was descending from the car to the station platform, and when one foot was on the second step, the train suddenly, and without warning, started backward out of the station, which caused him to be thrown the full length of his body upon the platform. *Held,* that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

When there is a doubt as to the inference to be drawn from the facts or where the measure of duty is ordinary and reasonable care, and the degree of care required varies with the circumstances, the question of negligence is necessarily for the jury.

Argued Oct. 8, 1903. Appeal, No. 17, Oct. T., 1903, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1901, No. 4326, on verdict for plaintiff in case of John T. Farr *v.* Philadelphia & Reading Railway Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BEITLER, J.

The facts are stated in the opinion of the Superior Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Gavin W. Hart*, for appellant.

*Preston K. Erdman*, for appellee, cited : Raughley v. West Jersey, etc., R. R. Co., 202 Pa. 43 ; Keller v. Louis City, etc., R. R. Co., 27 Minn. 173 (6 N. W. Repr. 486) ; Penna. R. R.

Co. v. Kilgore, 32 Pa. 292 ; Pennsylvania R. R. Co. v. Peters, 116 Pa. 206 ; Penna. R. R. Co. v. Lyons, 129 Pa. 113; Daly v. Central R. R. Co. of N. J., 26 App. Div. Rep. 200 (49 N. Y. Supp. 901).

OPINION BY ORLADY, J., March 14, 1904 :

The plaintiff, an old man aged eighty years, became a passenger on a train at Philadelphia about nine o'clock in the evening to be carried to Frankford, a branch terminal station of the defendant's system. Just before arriving at his destination he was obliged to go to the water-closet in the car to relieve his bladder. He came out of the closet as soon as he could adjust his clothing "probably one or two minutes after the train stopped," at which time the train was standing still at Frankford station. All the passengers and employees had left the train ; in his words " there was not a soul in sight." As he was descending from the car to the station platform, when his foot was on the second car step, the train, suddenly and without warning, started backward out of the station which caused him to be thrown the full length of his body upon the platform. Without offering any evidence the defendant requested the court to give binding instructions in its favor.. This was refused and the case was submitted to the jury in a charge to which no exception was taken, the single assignment of error being based on the refusal of the court to affirm a point submitted, viz : " under all the evidence the verdict must be for the defendant." The verdict determines that the plaintiff was a passenger at the time of the accident; that he had a good reason for entering the closet and did not remain therein an unreasonable time ; that he sustained his injuries through the sudden starting of the train when he was in the act of alighting from the car at Frankford station. There is no evidence tending to show that his delay in getting off the car was due to any negligence on his part. The defendant company adopted and maintained the water-closet as a necessary part of the equipment of the car, and while it remained unlocked it was an invitation to passengers to enter and use it as their necessities required. If his use of the closet was reasonable and proper, the fact that he entered it a few minutes (a purely conjectural time) before the train reached the station

would not of itself imply contributory negligence on his part. It does not appear what time the train stood at the terminal station but it is apparent that had it remained standing for but a few seconds longer, the plaintiff would have been discharged in safety. The exact length of time to be given must depend very largely upon circumstances. A sufficient time means, time to alight safely in the use of reasonable diligence and care, and has regard to all the circumstances which affect the getting off the train: Penna. R. R. Co. v. Lyons, 129 Pa. 113. This question was fairly submitted by the learned trial judge as follows : If you find he did not adopt for his own protection the precautions that a reasonably prudent man ought, then you ought not to find a verdict in his favor. If you find he was not guilty of negligence in the matter, and the railroad employees were, you will then pass to the amount of damages." As railroad companies usually carry not merely the vigorous and active, but also those who, from age or extreme youth, are slow in their movements, the time of stopping is not to be measured by the time in which the former may make their exit from the cars, but by the time in which the other class may, using diligence, but without hurry and confusion, alight. It certainly would not be permissible for them to be so reckless in regard to the limbs and lives of passengers as to start the trains, when it is known, or with reasonable care might be known, that passengers are in the act of alighting : Hutchinson on Carriers, 2d ed. sec. 612; Ray on Negligence of Imposed Duties, sec. 5, and notes; Patterson on Railway Accident Law, sec. 257. It may not be negligence per se for the trainmen not to make search for passengers who may be unavoidably detained in the closets when a train has completed its trip and is started from a terminal station to the yards, but the same might be urged in regard to passengers asleep or helplessly sick in the seats. The duty in each case would be measured by the circumstances. Moreover this company did define its duty in regard to assisting passengers. Its rules require that the conductors must see that brakeman promptly assist passengers when entering or leaving cars, and that brakemen must assist passengers when entering or leaving the cars, and further, that brakemen must also pass through the cars at the end of each trip, after pas-

sengers have left them, and carefully watch for articles forgotten by passengers.    Under this rule no part of the car is exempted from the brakeman's search for lost or forgotten articles and compliance with its direction would make known the presence of passengers who have not left the car.    The closet is as likely a place to find a lost or forgotten article as any other part of the car.    It is idle to claim that there was a reasonable examination of the car before it started to back away from the station.    If there had been the plaintiff would have been discovered: Leggett v. Western N. Y., etc., Railroad Company, 28 W. N. C. 236.    Their duty to make search for passengers was as imperative as to search for forgotten items of property. But rule or no rule, under the facts of this case it was for the jury to say, under the evidence and the reasonable inferences to be drawn from it, whether the plaintiff was given a reasonable time to alight when the car was standing at rest at its destination: Penna. R. R. Co. v. Kilgore, 32 Pa. 292; Penna. R. R. Co. v. Peters, 116 Pa. 206; Girton v. Lehigh Valley Railroad Co., 17 Pa. Superior Ct. 143; Girton v. Lehigh Valley R. R. Co., 199 Pa. 147; 6 Cyc. secs. 598 and 613.    There is no room for distinction between the measure of duty owing to passengers alighting at a terminal point as compared with that required at intermediate stations: Raughley v. West Jersey, etc., Railroad Co., 202 Pa. 43.    The defendant did not offer any evidence and if the plaintiff was to be believed he acted as promptly as it was possible for him to do, and when in the act of alighting he found himself in an emergency of the defendant's making and was violently thrown from the car.    When there is a doubt as to the inference to be drawn from the facts or where the measure of duty is ordinary and reasonable care, and the degree of care required varies with the circumstances, the question of negligence is necessarily for the jury: Rusterholtz v. N. Y., etc., Railroad Co., 191 Pa. 390; Iseminger v. New Haven Water & Power Co., 206 Pa. 591; Evans v. Philadelphia, 205 Pa. 193; Shuart v. Traction Co., 15 Pa. Superior Ct. 26.

The judgment is affirmed.


SMITH, J., dissenting:

It is the duty of a railroad company, on stopping a train at

a station, to hold it long enough to give passengers who wish to alight a time reasonably sufficient for that purpose; and it is the duty of such passengers to exercise reasonable diligence and care in leaving the cars. As the time required, and the diligence to be observed, usually depend on the circumstances present in each instance, the question respecting a failure of duty on either side is, in general, to be determined by a jury. As in all other cases, however, the question is for the jury only when the measure of care is indeterminate or the facts are in dispute. When the measure of care is fixed, and remains constant, and the facts are undisputed, the question of conformity with its requirements is to be determined by the court.

The question arising in the present case is whether, when a train has reached a terminal station, and, so far as can be seen, all passengers have alighted, it is the carrier's duty to search the closets before moving the train, to ascertain if there are passengers yet to leave, who have, without notice to the trainmen, placed themselves out of sight. If such is the carrier's duty, it is obviously a fixed and unvarying element of the measure of care on his part. There is nothing indeterminate about it. There is no question in relation to it to be determined by a jury, except when the fact of performance is in doubt. In the absence of such doubt, it is for the court to apply the rule. As said by Mr. Justice POTTER, in Custer v. B. & O. R. R. Co., 206 Pa. 529: " Whenever the facts are ascertained, the rule of conduct, or, in other words, the rule of law to be applied, is to be determined and laid down by the court, and is not to be left to be defined by the accidental feelings of a jury. . . . The law tends constantly toward the attainment of greater certainty of definition, and to the substitution of specific rules of conduct instead of featureless generalities. It is always desirable that the standard by which parties are judged should be one of specific acts or omissions, with reference to the special circumstances of the case. . . . Hence the long and growing line of decisions in which, instead of relying upon the vague and uncertain estimate of a jury as to the degree of care which would be exercised under the circumstances by a prudent man, there has been substituted the more precise and definite rule of certain specific acts, whose existence or omission constitutes negligence."

If the obligation to make a search of this character is by law cast on the carrier, it can arise only from the nature of the duties which carrier and passenger owe to each other at a terminal station. These duties grow out of the conditions ordinarily to be anticipated as likely to arise. On the part of the carrier, they include a stoppage for a time reasonably sufficient for the passengers to leave the cars, with the means and attention necessary to enable them to alight in safety. On the part of the passengers, they include the requisite preparations for leaving the cars, with reasonable promptness and care in alighting. If, ordinarily, with a terminal station at hand, passengers were likely to enter a closet, and to remain after all others had left the train, the carrier should recognize and provide for such a condition. But this condition, however, is of rare occurrence. It is so unusual, indeed, that we have been referred to no case, and have met with none, in which the question arising here has been presented. While railroad companies are not sparing of rules to meet all probable contingencies, they are not required to provide for one unlikely to arise. Here the carrier had rules requiring employees to assist passengers to enter and leave the cars, give them all necessary directions, and exercise the greatest care to prevent injury to them; and also to "pass through the cars at the end of each route, after passengers have left them, and carefully watch for articles forgotten by passengers." These rules obviously meet all the conditions ordinarily arising; and the probability that passengers may remain in a closet at a terminal station after all others have alighted is so remote that a rule requiring a search of the closets was deemed unnecessary. Since it is the passenger's duty to use reasonable diligence in alighting, it is not too much to require him, in the unusual contingency of visiting a closet as a terminal station is reached, to give notice to a trainman, that time may be allowed him to leave before the train is moved. In the absence of such notice, it must be held that the trainmen have a right to assume that, when no passengers remain in sight, all have left the train.

In the case in hand, the plaintiff was a resident of Frankford, the terminal station, and appears to have known that the train was about reaching the station. "When I arrived at Frankford station," he testified, "or a few minutes before, I

had occasion to go into the water-closet." He gave no notice of this to any trainman, and so far as appears there was no lack of opportunity for doing this. He remained in the closet until all other passengers and the trainmen had left the train, and they appear also to have left the station. He testified that when he reached the platform, on his way to alight, there was " not a soul in sight." His estimate of the intervening time, as " probably one or two minutes after the train stopped," seems merely conjectural. Here, as in McClintock v. Penna. R. R. Co., 21 W. N. C. 133, it was evident that if there was time for all the other passengers to alight safely there was time for him to do so, there being nothing to obstruct his movements. If from delay through his own act, unknown to the trainmen, he became exposed to danger, it was not the fault of the carrier.

There is no evidence of neglect by the trainmen of the rule requiring them to assist passengers in alighting while passengers were leaving the cars. The presumption is that the trainmen performed their duties, including that of passing through the cars in search of articles forgotten by passengers. The plaintiff not having then made his appearance, and the trainmen having had no notice that he had gone to the closet, they were justified in supposing that all the passengers had alighted, and that there was therefore no occasion for them to remain longer.

There being no facts in dispute, there was nothing to be submitted to the jury. There was no ground for the direction to find " whether or not the company did its duty " in the premises. If the company was required by law to search the closets, it was negligent in not doing so. If it was not required to do this, there was a full performance of its duty. Upon the unquestioned facts, it was for the court to declare, as matter of law, whether there was negligence on the part of the carrier. And since, as I view the law, there was no negligence, the defendant's point should have been affirmed, and the judgment reversed.

PORTER and MORRISON, JJ., concur in the dissent.