# Walthour *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Passenger—Alighting from train.*

1. It is the duty of a carrier of passengers not only to exercise the strictest vigilance in receiving and conveying a passenger to his destination, but also to set him down safely at a station at the termination of his journey. On the other hand, the passenger is bound to use reasonable diligence and care in getting off a train.

2. In an action brought by a passenger to recover damages for personal injuries alleged to have been caused by the sudden starting of a train before she had reasonable time to complete the act of alighting, evidence offered by the defendant to the effect that the train consisted of six cars, that five or six passengers got off and that from thirty-five to forty-five got on the train while it was standing, is not a sufficient basis for asking the court to instruct the jury that if the train "stopped long enough to allow other passengers to get on and off the train in safety, and that while it was so stopped other passengers actually did get off and a number of other passengers actually did get on, then it follows that it stopped long enough for the plaintiff to get off, and the verdict must be for the defendant."

3. A passenger who purchases a ticket for a particular station, intending to get off there, may change his mind, and get off at an intermediate station if it be a regular stopping place for the train, and he is entitled to a reasonable time to do so; and it is immaterial if the agent of the company sold the passenger a ticket to some other station than that which he called for and to which he was going.

Argued April 15, 1909. Appeal, No. 35, April T., 1909, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1904, No. 89, on verdict for plaintiff in case of Anna M. Walthour v. The Pennsylvania Railroad Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before FORD, J.

The facts are stated in the opinion of the Superior Court.

Defendant presented the following points:

3. If the jury believe the testimony that the train in ques-

tion stopped long enough to allow other passengers to get on
and off the train in safety, and that while it was so stopped
other passengers actually did get off and a number of other
passengers actually did get on, then it follows that it stopped
long enough for the plaintiff to get off, and the verdict must
be for the defendant.  *Answer:* This point is refused.  The
question of whether the train stopped long enough to permit
the plaintiff to depart from the train, is a question for you
under the evidence, and under the instructions I have given
you. [1]

4. If the jury find that the plaintiff's ticket did not read to
Shadyside, and that defendant did not know she expected to
get off there, or did not know that she was in the act of getting
off, then the defendant cannot be charged with negligence in
starting the train before the plaintiff had alighted, and the ver-
dict must be for the defendant.  *Answer:* Refused. [2]

Verdict and judgment for plaintiff for $1,350.  Defendant
appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*James S. Crawford,* with him *Patterson, Sterrett & Acheson,*
for appellant, cited: McClintock v. R. R. Co., 21 W. N. C. 133;
Hurt v. Ry. Co., 94 Mo. 255 (7 S. W. Repr. 1); Chicago, etc.,
R. R. Co. v. Smith, 110 Tenn. 197 (75 S. W. Repr. 711); Hatch
v. Ry. Co., 212 Pa. 29.

*O. P. Metcalf,* with him *William Metcalf, Jr.,* for appellee,
cited: Schmidt v. McGill, 120 Pa. 405; McNeil Co. v. Nimick,
194 Pa. 187; Penna. R. R. Co. v. Lyons, 129 Pa. 113; Dunn v.
R. R. Co., 47 Legal Int. 524; Hatch v. Ry. Co., 212 Pa. 29.

OPINION BY HENDERSON, J., July 14, 1909:

The two assignments of error call for a consideration of the
answers of the trial court to the third and fourth points pre-
sented by the defendant.  The plaintiff's charge against the
defendant was that she was a passenger on one of its regular
passenger trains which stop according to schedule at Shady-

side, her destination; that while in the act of alighting from the car in which she was riding the train was suddenly started with a jerk before she had reasonable time to alight, as a result of which she was thrown to the ground, and received the injury for which she claimed damages. The principal issue arising from the evidence was whether the train stopped a sufficient length of time to enable the plaintiff to leave the car in safety. Her own evidence and that of witnesses present was to the effect that the train stopped a very short time; that the plaintiff was sitting near the end of one of the cars; that she arose promptly, carrying an umbrella and hand satchel, and went onto the front platform, that while she was descending the steps of the car there was a sudden movement of the train which threw her from the step. In reply to this evidence the defendant called the conductor of the train who testified that the train stopped the usual time; that it consisted of six cars; that five or six passengers got off and that thirty-five to forty-five got on the train while it was standing. Other employees of the defendant corroborated the statement of the witness that other passengers got off and on before the train started. The defendant's third point was predicated of this evidence and asked the court to instruct the jury that if the train stopped long enough to allow other passengers to get on and off the train in safety and that while it was so stopped other passengers actually did get off and other passengers did get on, then it stopped long enough for the plaintiff to get off and their verdict must be for the defendant. The argument in support of this proposition is based on the opinion in McClintock v. Penna. R. R. Co., 21 W. N. C. 133. In that case the very question arising in this case was submitted to the jury by the court, and the assignments of error were to comments made by the trial judge on the weight of the evidence offered by the plaintiff and the strong contradictions by the defendant's witnesses. There was evidence there that the train stopped three or four minutes; that about 100 passengers got on and off the train and that one witness took his little girl into one of the cars after it stopped and came out again onto the platform and then saw the plaintiff standing on the platform of one of the cars from which he at-

tempted to get off after the train started. The language of the Supreme Court had reference to this evidence and was used to apply to that case. It was not intended to be the announcement of a legal proposition that if some of the passengers alighting from a train got off before it started, anyone who did not alight before it started might have done so safely. The testimony of the witnesses and the circumstances of the case must be taken into consideration. The agility and alertness of some passengers make it possible for them to alight with extreme promptness; others with less physical ability or with less experience in traveling on trains or with the impediment of luggage may not be able to alight as quickly. It does not necessarily follow as a conclusion of law that because four or five persons alighted from a train having six cars that the train stopped long enough to reasonably allow the plaintiff to get off. Whether the train remained at the station long enough to permit the plaintiff to depart in safety was a question of fact for the jury and the court gave clear and full instructions to the jury on that point. "It is the duty of the carrier of passengers not only to exercise the strictest vigilance in receiving and conveying a passenger to his destination, but also to set him down safely at a station at the termination of his journey:" Englehaupt v. Erie R. R. Co., 209 Pa. 182. The plaintiff's evidence tended to show that this duty was not performed, and the jury could alone decide the question having in view the credibility and interest of the witnesses and their opportunity to observe the situation. The point calls on the court to draw the inferences from contradictory evidence and that from witnesses the weight of whose testimony might be affected by their appearance, their manner of testifying or their opportunity to see. The following language of the court in the charge to the jury is appropriate and very clear: " If you find from the evidence that the train was stopped for a time sufficient to permit passengers to depart and that Mrs. Walthour delayed in starting to or in departing from the train or if after starting she hesitated and stopped and without notice to or knowledge of the employees of the defendant company attempted as the train was in motion or starting to alight from the train, she cannot re-

cover. That is, if she failed to use reasonable diligence and care in getting off the car or getting off the train she cannot recover." This was as much as the defendant was entitled to under the evidence on that point.

The appellant's second proposition is that if the plaintiff's ticket was not to Shadyside and the defendant did not know that she intended to get off there or did not know that she was in the act of getting off then the defendant cannot be charged with negligence in starting the train before the plaintiff had alighted. The defendant denied that the plaintiff had bought a ticket to Shadyside. The conductor testified that her ticket was not to Shadyside, and the agent at Irwin Station testified that he did not sell a ticket to Shadyside that morning. The plaintiff alleged that she asked for a ticket to Shadyside and supposed she had it and that she saw the name "Shadyside" on the ticket. The conductor admits that he took up her ticket, but does not state what destination it called for nor was any effort made to show that her ticket was to any other station. However that may be, she had a right to get off at Shadyside. It is admitted that that was a regular stopping place for this train, and that other passengers got on and off. She had not evaded the payment of her fare, and if the agent of the company sold her a ticket for some other station than that which she called for and that to which she was going she was not required to remain in the car and go on to that station. A passenger may change his mind and get off at an intermediate station if it be a regular stopping place for his train and is entitled to a reasonable time to do so. What is sufficient time for this purpose was said in Penna. R. R. Co. v. Lyons, 129 Pa. 113, to be "time to alight safely in the use of reasonable diligence and care, and has regard to all the circumstances which affect the act of getting off a train." When the train stops to let off passengers it is the duty of the employees having charge of the train to see that all who are getting off have safely alighted before the train is started. If they fail so to do and a passenger who is exercising due diligence and care in getting off is injured because of the starting of the train the defendant is liable for such injury. The case of Hatch v. Phila. & R. Ry. Co., 212

Pa. 29, cited by the appellant, presents a very different state of facts from that under consideration. In that case the plaintiff attempted to get on a moving train and was injured in so doing. He was walking leisurely toward the station while the train was standing there. He did not indicate to any of the train employes that he desired to get on the train, nor did his conduct indicate any intention so to do. From anything which could be observed by the trainmen he was not an intending passenger in sight, and it was therefore not negligence to start the train before he got on. If this had not been a regular stopping place for the train the appellant's argument of want of notice of the intention of the passenger to alight would have weight. That was the situation in Chicago, etc., R. R. Co. v. Smith, 110 Tenn. 197, cited by the appellant. It has no pertinency to the case of a train actually stopping at a regular station and discharging and receiving other passengers. The case was submitted to the jury in a full and fair charge and the instructions by the court on the law were in accordance with the principles established in this state.

The judgment is affirmed.