## Sweigart v. Shreiner.

*George T. Hambright* and *John E. Malone*, for plaintiff.

*Charles W. Eaby*, for defendant.

LANDIS, P. J., April 19, 1930.—On or about April 25, 1928, the plaintiff entered into a written agreement with the defendant, who was trading as the Garden Spot Sight-Seeing Bureau, in the following words:

"I hereby accept one passage to California and The National Parks south to San Diego and north to Seattle and Vancouver, B. C., Grand Canyon, Yosemite, Mt. Rainier, Yellowstone, Colorado Springs.

"Time required: 65 days. Approximate No. of miles to be covered: Ten thousand.

"Price per person: $900.00 double.

"It is understood that: All meals and lodging, boat rides and side trips to be included in the contract price above mentioned, of which about ten per cent. will be paid on the signing of this contract and the balance before starting of this tour. Porter and waiter tipping is not included.

"It is hereby agreed: That in case of sickness or for any unforeseen reason the tour would not be started the deposit money will be refunded in full."

The 10 per cent., or $90, was paid by the plaintiff on the execution of the agreement, and the balance of $810 was paid before the starting of the tour. The tour started, according to an itinerary furnished, on Monday, June 4, 1928, and while there is some complaint made in the statement concerning the

defendant's failure on certain occasions to furnish accommodations said to have been covered by a parol contemporaneous agreement, no claim for damages is made in this suit for such failure, and so we may pass all such matters by without further comment.

However, on July 29, 1928, the motor bus of the defendant in which they were traveling broke down about three miles east of Big Springs, Nebraska, and it is alleged that the defendant did not complete the last nine days of the trip; that, therefore, the plaintiff was compelled to expend $42.10 for autobus fare, $4 for a hotel room, and $10 for meals in returning from Big Springs, Nebraska, to Lancaster, Pennsylvania. She claims for the nine days at $13.85 a day, or $124.65, and about what she paid out.

The defendant has filed an affidavit of defense in which he claims the plaintiff has shown no cause of action. I cannot see on what ground that claim can at the present time be supported. If the defendant made a contract and did not fulfill it, he certainly is liable for whatever loss the plaintiff sustained by reason of such default. We are not anticipating what the proof will be on the trial, but are resting solely on the allegations set forth in the statement, which must now be assumed as susceptible of legal proof.

"A passenger, in the legal sense of the word, is one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier, as the payment of fare or that which is accepted as an equivalent therefor:" Pennsylvania R. R. Co. v. Price, 96 Pa. 256. "The relation of carrier and passenger commences when one puts himself in the care of the carrier, or directly within its control, with the bona fide intention of becoming a passenger, and is accepted as such by the carrier, as where he makes a contract for transportation and presents himself at the proper place and in a proper manner to be transported:" 10 Corpus Juris, 611, 612. "The relation of carrier and passenger having been constituted, continue until the journey, expressly or impliedly contracted for, has been concluded, and the passenger has left the carrier's premises, unless the relation is sooner terminated by the voluntary act of the passenger:" 10 Corpus Juris, 623, 624. "Where a person purchases a ticket for passage on a train or car, the company assumes the relation of common carrier toward him, and thereby assumes to perform all the duties of such carrier, and it is immaterial, so far as its liability for injuries is concerned, whether these duties arise by express stipulation or by a contract which necessarily involves their observance. Unless performance is waived, it is the duty of the carrier to transport a passenger according to the terms of his contract, and if it fails so to transport him, and is not prevented from so doing by an act of God, or of the public enemy, or by the passenger's own conduct, there is a breach of contract for which the carrier is liable in damages:" 10 Corpus Juris, 798, 799. It is also said that "where the continuity of the journey is interrupted by misfortune or accident without fault on the part of the passenger, he is entitled to continue his journey by another train:" 10 Corpus Juris, 809.

In Railroad Co. v. Aspell, 23 Pa. 147, our Supreme Court said: "A passenger who has been negligently carried beyond a station where he intended to stop and where he had a right to be let off may recover compensation for the inconvenience, loss of time and labor of traveling back;" and in Englehaupt v. Erie R. R. Co., 209 Pa. 182, that "it is the duty of a carrier of passengers not only to exercise the strictest vigilance in receiving and conveying a passenger to his destination, but also to set him down safely at a station at the termination of his journey." See, also, Brooks v. Phila. & Reading Ry. Co., 218 Pa. 1; Walthour v. Pennsylvania R. R. Co., 40 Pa. Superior Ct. 252.

The question as to the parol modification of a written contract is not at present involved. It may come into the case, but not at this time. It will not be doubted that, under some circumstances, such proof can be presented before a jury, and it is now assumed to be susceptible of proof.

We, therefore, decide the point of law raised in favor of the plaintiff and order the defendant to file a supplemental affidavit of defense to the merits of the case within fifteen days of the filing of this opinion.

Point of law decided in favor of plaintiff.

From George Ross Eshleman, Lancaster, Pa.