# New Jersey Railroad Company *versus* Kennard.

1. The proposition is not sound as a general principle, that "no car is road-worthy if the windows are not so constructed as to prevent the passengers from putting their arms through them ;" but it is applicable to a road which in some places is so narrow as to endanger projecting limbs.

2. A carrier of passengers or goods is bound to provide a proper vehicle; in default of which he becomes responsible for any loss or injury which may be suffered; provided it happen without negligence or misconduct on the part of the party injured.

3. A carrier of passengers is bound to omit no caution which may conduce to their safety.

THIS case came up from the Nisi Prius.

[New Jersey Railroad Company *v.* Kennard.]

It was an action on the case by Manning Kennard *v.* The New Jersey Railroad and Transportation Company, to recover damages for personal injuries to the plaintiff, by the breaking of his arm. The plaintiff was a passenger in the defendant's cars, on a journey from New York to Philadelphia, on the 27th day of August, 1849. In the course of the journey the cars pass over the Delaware and Raritan Canal, at Trenton. The cars pass the canal by a bridge, the side of which, opposite the window, where the plaintiff was sitting, is lined or sheathed with weather-boarding, so as to present a smooth, plain, unbroken surface, from each end of the bridge to the king post (or post in the centre of the bridge), with which it is in line, the king post forming a part of the sheathing; so that any projection from the window, would impinge against the face of the post opposite the window. At this post it was alleged that the plaintiff's arm was broken. A curve existed on the bridge.

The bridge did not belong to the defendants; was not built by them; and was not on their railroad. It was built in 1844.

There was a contusion on the plaintiff's arm, about two and a half inches above the elbow, and the fracture was a little above the contusion. There was also another contusion about as far below the elbow as the fracture was above it; there was no contusion or abrasion of the elbow itself.

The witnesses testified that there was no danger of such an accident to a passenger keeping his arms inside the car. No injury to a passenger had before occurred there, but the cars had struck against the king-post before.

The material question upon the whole case was, Whether the defendants were obliged so to construct their cars with slats, bars, wire gauze, or other barricades, at the windows, so that a passenger could not put his arms out at the windows; and, if defendants did not do so, whether they are liable?

Charge of GIBSON, J.—"A carrier of either goods or passengers, is bound to provide a carriage or vehicle, perfect in all its parts; in default of which he becomes responsible for any loss or injury that may be suffered, provided it happen without negligence or misconduct on the part of the party injured. A carrier of passengers is bound to omit no precaution that may conduce to their safety. He is bound to guard before hand against every apparent danger that may beset them. The dangers incident to travelling in railway cars, are few in comparison with those incident to other modes of travel; but among the most prominent of them, is risk of injury to limbs stuck out of the windows, where the cars are not so constructed as to prevent it. Any one who has travelled by

railway, must have observed that even the most careful passengers forget the risk, and unconsciously suffer their elbows to slip out beyond the window sill. What can the carrier do to prevent it? * * * No more is required than a few metallic rods set in the windows perpendicularly or horizontally, or a netting of wire work, or even wooden slats. None of these would materially impede the circulation of the air, or abridge the comfort of the passengers, while it would make their safety sure. (A car without any of these appliances, is, to coin a phrase, not road-worthy, and a carrier is responsible for any loss that may happen from that cause alone.) Risking his passengers in an unsafe car, it behoves him to use every means in his power to guard against danger from it at dangerous places, by audibly proclaiming in the car the necessity of keeping arms and heads inside. If any one should disregard such warning, he would incur the charge of wilful neglect of his own safety; and when there is negligence on both sides, neither party is answerable for any injury from it. It is not pretended that the passengers were warned not to put out their arms in passing this bridge, and so far the case is against the defendant.

"But even verbal warning might not protect the carrier in every case. It would be of no service to a foreigner ignorant of the language, or to a sleeping passenger, or to a child incapable of reason. The utmost care of a parent or nurse, is insufficient to restrain a child's curiosity to look at things outside. Should either of these be injured by want of a proper construction of the car, an action would lie for it. Nor would written notice stuck up be any better. There may be passengers who can't read, and they would, of course, not be affected by it. Others may get into the car at night, and some might not observe it even in day time, and neither of these would be chargeable with negligence. At best, however, such notice is too general to be of service. It gives no more than general information, known to everybody without it, that injury may result from putting heads or limbs through the windows. It would seldom be recollected at the critical moment; but it would be otherwise in regard to particular information at a particular time of a particular danger at a particular place. Surely a written notice is not an equivalent for a properly constructed car. But there was not even that.

"I will not say that there might not be cases of injury to a passenger from his own negligence, in the absence of all the precautions I have mentioned. A man who would choose to loll on the window sill with his head, arms, and a part of his body hanging outside of it, would not ride like a prudent man or a gentleman, and he would have to bear the consequences of his foolhardiness. But if he were sitting at the time as passengers usually sit, the case would be different entirely.

S

[New Jersey Railroad Company *v.* Kennard.]

" Now it is a notorious custom in railway cars, and it is proved to be so by the evidence in the cause, for passengers next to the windows, to rest their elbows on the sills of them; and (carriers are bound to take notice of the customs and habitudes of railway passengers, and to provide for them. If a passenger, therefore, sits and rides in a car as others generally do, and receives injury from an imperfect construction of it, the carrier is liable for it.)

" It is urged that his contract is to carry the passengers inside of the car, and that he has nothing to do with anything which happens outside of it. (That would be true in regard to a passenger who was standing on one of the platforms to enjoy his cigar, the air, or the prospect; the risk of danger from his position would be extraordinary, and exposure to it would be rash as well as wilful; but in regard to leaning on the window sills the case would be different. A passenger is not entered as a bale of goods, nor is he bound to behave like one. He is entitled to all the comforts which change of position and change of place may afford. He may have his elbows on the window sills, ride back foremost or face foremost, and the occupants of adjoining benches may reverse one of them for purposes of conversation, as was done in this case, without incurring the charge of remissness in not keeping a sharp lookout. A person who dare not put his nose out of the car, could not discover that a post was coming. Nor are all the duties of the carrier to his passengers performed, when the conductor puts him into the car and leaves him to shift for himself. He is bound to guard him from every danger which extreme vigilance can prevent. The passenger has put his life into his hands, and the carrier is bound to defend it as his own. In the present case, it would seem that every precaution was neglected, inasmuch as there was neither a properly constructed car, nor a verbal warning of danger, nor even the miserable and insufficient substitute, a written caution.)

" (If, then, the plaintiff's arm was broken by an upright post in the bridge, the plaintiff is entitled to recover.)

" The counsel for the defendant require me to instruct you on points of law which would arise out of a particular state of the facts, leaving you to say whether such facts are sustained by the evidence.

" 1. I am asked to instruct you, That if you believe that the injury was caused in any degree by any carelessness or negligence of the plaintiff himself, or that his *acts* contributed to it, he cannot recover.

" (I have already told you, that if there was negligence on both sides, neither is responsible to the other; but I cannot direct you without qualification, that if the mere *act* of the plaintiff contributed to the injury, he may not recover. To have that effect, it must

[New Jersey Railroad Company *v.* Kennard.]

have been an act of carelessness or negligence, and it will be for you to say whether the resting of his arm on the window sill, with the elbow outside of it, was such. If the law were as the defendant requires me to lay it down, there never could be a recovery in any case like the present. It is for you to say whether such resting of the arm is proof of negligence.)

" 4. That if you believe the car was staunch and good, that the railway was in good travelling order, and that the bridge was sufficiently wide for the car to pass, especially if cars had done so for five years without accident, the burden of proof is on the plaintiff to show negligence on the part of the company.

" (No car is good if the windows are not so constructed as to prevent the passengers from putting their limbs through them. It may be staunch, but without the appliances I have mentioned, it cannot be perfect.) The length of time that elapsed without accident is immaterial except as to damages; and without blame on the part of the passenger, every injury to him without fault on his part, must be compensated. If the car was deficient and consequently not good, the burden of proof is on the carrier.

" 5. That the contract was to carry inside the car; and that if the passenger would have been carried safely keeping his limbs inside the car, he cannot recover.

" (I have already said that such is not the law.)

" 6. That the burden of proof is on the plaintiff to show affirmatively that his arm was inside the car.

" (I cannot so instruct you. He may recover though it were outside, provided he was reasonably attentive to the safety of it.)

" 7. That the plaintiff is only entitled to compensatory damages.

" That is a matter exclusively for you, and not for legal direction. In an aggravated case of personal injury a jury may go beyond mere compensation. But this does not seem to be such a case. No special blame can be imputed to the company. They constructed the cars as others had done. The road was not theirs, and they had no power to alter the bridge. Their cars had passed over it during five years without accident; and this greatly tended to diminish their fear of accidents in time to come. But the question of compensation is not exactly a question of dollars and cents. There is no measure or standard of damages for a broken limb; and you ought therefore to be liberal against the author of it. You ought certainly to give enough; for it is safer to err, if at all, against the party who was the cause of the injury, than against an innocent man who suffered it. You are, however, the exclusive judges of the amount.

" 8. That the company is responsible only for defects discoverable by a careful man after a careful examination and exercise of a sound judgment.

[New Jersey Railroad Company *v.* Kennard.]

"(This is true, but were there such an examination and exercise of judgment? The defective construction of the car must have been obvious to the dullest perception; and the company having the lives and limbs of the travelling public in charge, were bound to see it. They would not see it; and unless you shall find that the plaintiff has been negligent, or that the accident did not happen as it is stated in the declaration, it will be your duty to make them pay for it.)"

February 4, 1852, verdict for plaintiff for $2500.

Error was assigned to the parts of the charge in parentheses.

*Mallery* and *Read*, for plaintiff in error.—It was said that the Court charged, as a *matter of law*, that the car of the company was not properly constructed; and it was contended that the construction of the car and the position of the plaintiff in the car and the other facts involved in the case, should have been submitted to the jury: 4 *Bin.* 129; 4 *Yeates* 115.

It was said to be culpable negligence and want of care in the plaintiff in the suit, to put his arm out of the window, and that if he was guilty of want of care or of negligence, he was not entitled to recover: 6 *Wharton* 311; 4 *Comstock* 349; 1 *Cowen* 78; 6 *Id.* 189; 19 *Wend.* 399; 11 *East* 60; 4 *Harris* 468.

Though a *defendant* has been guilty of negligence, the plaintiff, if he has not taken care to avoid the injury, is not entitled to recover: 2 *Hall* 151; 2 *Pick.* 621; 12 *Id.* 177; 4 *Car. & Payne* 106, 19 *E. C. L. R.* If the car was not a proper one, yet if the plaintiff in the action could have avoided the accident by ordinary care, viz., by keeping his arm within the car, he cannot recover.

The law regulating the responsibility of common carriers of *goods*, does not apply to the carrying of human beings: 2 *Peters* 150; *Angell on Carriers*, sec. 522.

*J. T. Montgomery* and *Cadwalader*, for the defendant in error.— The company gave the plaintiff a ticket which was in evidence, and thereby undertook to carry him safely. Though the bridge was not on the road of the defendant, but on that of the Camden and Amboy Company, the cars of the defendants travelled the whole road from Jersey City to Tacony. The company had the control of its cars, and it was their duty to adapt them to the road. The bridge was a *swinging* bridge, and was therefore insecure, and a *curve* existed on it. The cars, several times before the accident in question, had struck against this post in the bridge. It was said that the plaintiff was sitting in a usual and ordinary position in the car, about the middle of it; his arm resting on the win-

[New Jersey Railroad Company v. Kennard.]

dow sill; when by a jolt caused by contact with the bridge, the elbow was thrown from its rest, and dropped down in an upright position *outside* of the car, and was thus caught between the side of the car and the king post in the bridge, and broken. The distance between the side of the car, at the place where the plaintiff was sitting, and the post against which the arm was struck, was only from 2¼ to 2½ inches.

It was contended that the carrier of passengers impliedly undertakes that his carriage shall answer the purposes of the road, and of the transportation for which it was intended: 1 *Carr. & Payne* 414; 9 *Bing.* 457; 2 *M. & Scott* 621. Coach owners are answerable for injuries arising from the misconduct of their drivers. 6 *T. Rep.* 659; *Peake* 81; 1 *Camp.* 167; 2 *Stark.* 37. In some of these cases it is decided that before passing through a dangerous place, the driver is bound to give the passengers notice. Also cited, 2 *Barn. & A.* 169; 13 *Louis.* 349; 8 *Barr* 479, Laing *v.* Calder; 1 *Jones* 146; *Story on Bailments*, sec. 592, 560.

Whether a car is road-worthy is of the same character as the question whether a ship is seaworthy; and what constitutes *seaworthiness* is a question of law. Though the existence of disputed facts on which seaworthiness depends is for the jury, yet the Court may instruct them what facts, if proved, constitute unseaworthiness in law: *Phillips on Ins.* 310–11; 1 *Wharton* 400–403; 4 *Bin.* 137.

Though to submit to the jury a question as to facts not in dispute, is irregular, yet in this case evidence was positive that the cars were not provided with wires or slats, to prevent the arms from slipping out of the windows. The Court instructed the jury that if there was negligence on both sides, neither was responsible to the other. See answer to 1st point; also 4 *Harris* 463, Beatty *v.* Gilmore. But in the present case there was no fact in evidence from which the jury would have been authorized to infer a want of care on the part of the plaintiff in the suit. It was for the *defendant* to prove such want of care. As to the amount of care required of the plaintiff, reference was made to the case of Beers in 19 *Conn.* 566; *Id.* 507; and also 5 *Exch.* 243.

The mere happening of an injury to a passenger, raises *primâ facie* a presumption of neglect, and throws upon the carrier the burden of proving otherwise: 8 *Barr* 483; 11 *Pick.* 106; 2 *Camp.* 80.

October 12, 1853. PER CURIAM.—This case was rightly tried at Nisi Prius, and the principles on which the cause was submitted to the jury, are entirely correct. The language of the learned judge who presided at the trial, seems to be too broad as a general principle, where he says that "no car is good if the windows are not so constructed as to prevent the passengers from putting their limbs through them." But in its application to a road, which in some places is so narrow as to endanger projecting limbs, as here, the instruction is proper. Judgment affirmed.