## Hassan *v.* Reading Company, Appellant.

*Negligence—Railroads—Passenger alighting from car—Sudden jar —Case for jury.*

In an action of trespass to recover damages for personal injuries, the case is for the jury and a verdict for the plaintiff will be sustained, where there was evidence, although contradicted, that the plaintiff, while alighting from a train, was thrown out of balance by a sudden starting, and that her hand was caught in the jamb of the car door.

It is the duty of a carrier of passengers not only to exercise the strictest vigilance in receiving and conveying a passenger to his destination, but also to set him down safely at a station at the termination of his journey; but the passenger is bound to use reasonable diligence and care in getting off a train.

Argued October 14, 1926. Appeal No. 117, October T., 1926, by defendant from judgment of C. P. No. 4, Philadelphia County, March T., 1925, No. 2675, in the case of Ada Hassan v. Reading Company. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before FINLETTER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $500 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were refusal of de-

fendant's motions for a new trial and for judgment non obstante veredicto.

*Henry R. Heebner,* and with him *Wm. Clarke Mason,* for appellant.

*Samuel Melnick,* for appellee.

OPINION BY CUNNINGHAM, J., March 3, 1927:

Plaintiff was a passenger on a railroad train operated by defendant and when about to alight therefrom at a station platform had several fingers of her left hand crushed between the jamb and the door of one of the coaches. In an action to recover damages for the injuries then sustained she contended that the train was so negligently operated by defendant's employes that it was caused to start while she was endeavoring to alight and before she had a reasonable opportunity to descend from the platform of the car and started so suddenly and with such a jerk that the door, which was not fastened back, was swung shut on her hand and fingers. The defendant contended on the other hand that the evidence for the plaintiff did not show any negligence on the part of defendant which was the proximate cause of her injuries. There is an irreconcilable conflict between the testimony of the plaintiff and that of the principal witness for the defendant, the baggageman on the train, who also announced stations and assisted passengers to alight from the platforms between the combination smoking and baggage car and the next coach. Both are interested witnesses and one of them has plainly attempted to deceive the court and jury with respect to material facts. It would be difficult to escape the conclusion that this attempt was wilful. About the only facts upon which they agree are that plaintiff was a passenger at the time and place alleged and that her hand was injured through being caught in a car door. Plaintiff says

her injuries were caused by the sudden and premature starting of the train after it had come to a full stop at a station and while she was on the rear platform of the coach in which she had been riding waiting her turn, as the last of four or five passengers then alighting, to descend the steps to the left. After stating that she was employed in Philadelphia as a clerk and boarded the train at the Reading Terminal about six o'clock in the evening to go to Columbia Avenue Station, that she had left her seat and was standing inside the car when the train stopped at this station and then followed the other passengers through the rear door which was in a swinging position, plaintiff testified: "When I was ready to get off there were a number of people ahead of me, really more people that evening than is usual, and I was the last one to get off, and as I was standing and was holding on to a pole [afterwards described as the handlebar on the body of the car, just outside the door] which was there for people to hold on to, when I was getting ready to get off, I naturally let the pole go when I was ready to get off and was ready to step down, and just then, when I was the last one, I heard the brakeman say, 'All aboard,' and he gave the signal for the train to start, and the sudden jerking of the train made me sort of fall, and at the time I caught hold of the place where the door shut. . .. ... . The door was in a swinging position, and the sudden jerking of the train made the door shut right on my hand, and my hand was caught between the door. Q. What hand was it? A. The left hand. Q. What happened to it? A. At the present moment I started to scream, there was no one there, and the brakeman told the fellow to stop the train, naturally, and he came up and he unfastened it." During her cross-examination in reply to the inquiry where she put her hand after she took it off the handlebar she replied: "I didn't put it any place. I was

just ready to alight from the train. Q. Then how did it get hurt? A. The sudden jerk of the train, and I got hold again, I didn't get hold of that place, I got hold of the first thing, because I was about going to fall when the train started to move, and I put my hand right near the pole, just where the door is.''

The only witness for defendant, who claimed to have seen the accident, was the baggageman and he testified that he was between the smoking car and the next coach as the train approached Columbia Avenue Station; that when he announced the station the first person to approach the front of the coach for the purpose of leaving the train was the plaintiff; that when she got to the door he walked down the steps to help her off and while he was on the second step heard her scream and, upon looking around, saw that her hand was caught in the door; that he reached around her and pushed the door back and as he did so ''there was a man there with his hand on the knob of the door, on the outside of the car''; that the man went to the platform of the smoking car and left the train; and that the train after having stopped did not start again until after he had assisted plaintiff from the train. These stories cannot be reconciled. With the testimony in this condition defendant submitted a point for binding instructions which was refused and the questions with respect to defendant's negligence and plaintiff's contributory negligence were submitted to the jury in an impartial and adequate charge, no part of which has been assigned for error. Following the rendition of a verdict for the plaintiff in the sum of $500 motions were made for a new trial and judgment n. o. v. The refusal of the point and the overruling of these motions are the errors assigned. The first question therefore is whether binding instructions would have been proper and in its consideration we must give the plaintiff the benefit of every fact and inference of fact pertinent

to the issue which a jury could legitimately find from the evidence when read in the light most advantageous to the plaintiff and with the conflicts therein resolved in her favor: Strawbridge, App., v. Hawthorne, 47 Pa. Superior Ct., 647, 649; Uhler v. Jones, 78 Pa. Superior Ct. 313; Cameron v. Townsend et ux., 286 Pa. 393. We are not called upon to pass upon the credibility of the witnesses. The jury has done that and evidently rejected the testimony of the baggageman. The measure of defendant's duty to the plaintiff and the degree of care required of her are clearly stated by Judge HENDERSON in Walthour v. Pennsylvania R. R. Co., App., 40 Pa. Superior Ct. 252. As summarized in the syllabus of that case "It is the duty of a carrier of passengers not only to exercise the strictest vigilance in receiving and conveying a passenger to his destination, but also to set him down safely at a station at the termination of his journey. On the other hand, the passenger is bound to use reasonable diligence and care in getting off a train"; see also Englehaupt v. Erie Railroad Co., App., 209 Pa. 182. Trains must be stopped at stations for a sufficient length of time to give passengers a reasonable opportunity to alight and the premature starting of a train with a sudden jerk while a passenger is in the act of alighting therefrom, and that act is or should be known by those in charge of the train, is negligence: Montalini v. Penna. Co., App., 256 Pa. 249; Bockelcamp v. Lackawanna and Wyoming Valley Railroad Co., 232 Pa. 66, 72, and cases there cited. But it is earnestly contended by the learned counsel for defendant that, granting the applicability of the principles of law to which we have referred, the evidence here justifies merely the conclusion that the closing of the door was the proximate cause of plaintiff's injuries, and as the evidence failed to show any defect in the door itself or in the catch, or that it was left in a swinging posi-

tion by anyone for whose acts the defendant is responsible, the verdict must have been the result of a mere guess on the part of the jury. This argument entirely overlooks the fact that the premature starting of the train with a jerk was the negligent act alleged in the statement of claim and testified to by the plaintiff as the act which, using the description of a proximate cause adopted by counsel, set in motion the force which produced the result complained of by its continued operation and without any intervening agency. The case of Polis et al., App., v. Philadelphia and Reading Railway Co., 273 Pa. 591, cited by counsel for defendant, is distinguishable on its facts from the present case. In that case, and in the case of L'Hommedieu, App., v. The Delaware, Lackawanna and Western Railroad Co., 258 Pa. 115, therein cited, there was no premature starting of the train while passengers were alighting. In those cases the plaintiffs were standing with their hands on the door jamb and the injuries were caused by the closing of the doors—in one case accidentally and in the other intentionally—by the trainmen, but in neither case was there any evidence showing how long the passengers had their hands on the door jambs or that the trainmen knew or ought to have known that they were in that position. The facts being disputed, it was for the jury to determine in the case at bar whether the facts as they found them to be constituted a continuous succession of events, so linked together that they became a natural whole and resulted in injuries which were the natural or probable consequence of the sudden starting of the train as their primary cause. Again, it is contended that the testimony of the plaintiff was so contrary to physical laws and so incredible that a jury should not be allowed to base its verdict thereon. This argument is predicated upon the fact that the plaintiff testified in effect that she was thrown toward the body of the car by the sud-

den jerk of the train in starting and that it moved only "about an inch" before it was stopped. It is argued that she could not have been thrown in that direction by the starting forward of the train. During her cross-examination the trial judge asked her the question "How was it you were thrown toward the body of the car if the car was going forward? I would think you would be thrown the other way, away from the door?" to which she replied "I was thrown sort of— I don't remember just how I was thrown." With respect to the extent of the movement of the train, plaintiff said in response to an inquiry as to how far it moved "Just about, I should imagine, it didn't move more than about an inch, because when I started to scream the conductor saw me and another woman on the car yelled, and naturally he waved for the man to stop again." When the court said to her "The man could not signal three car lengths to the conductor and have him apply the brake while the car is going only an inch" she answered "I don't just exactly know the measurements ....... When that happened I was so hurt and—" The attention of the jury was called to this manifest inaccuracy in the plaintiff's testimony by the following language in the charge: "Of course that is incredible as stated. I doubt whether she means us to believe that exactly in that way, but as stated it is absolutely incredible. That is the statement." The direction in which a person standing in the position described by plaintiff would be thrown by a sudden starting of the train might depend to some extent upon the position in which the person was standing, the balance of the body at the time, the amount of slack in the train and how it was taken up, and many other circumstances. We cannot say that plaintiff's testimony was so incredible in any particular that the court would have been justified in refusing to submit it to the jury for their consideration. After a careful

examination of all the evidence a majority of this court are of opinion that there was evidence for the plaintiff from which a jury could reasonably conclude that the employes of defendant prematurely started the train with a sudden jerk while plaintiff was using due care in alighting therefrom and that this sudden starting of the train was the proximate cause of her injuries. Binding instructions therefore could not be given for defendant and the first and second assignments of error are dismissed.

By the third assignment it is alleged that the court erred in refusing a new trial. The only reason for a retrial now requiring consideration is that the damages are excessive. In refusing a new trial the court below said "The verdict was not large and the injuries were evidently quite painful. Three fingers were broken, the two upper phalanges of each being comminuted, and the flesh crushed so that one nail came off, and another was hanging, and had to be removed." We see no indication that the jury adopted either a wrong basis or a wrong measure in fixing the damages or that the verdict is the result of prejudice rather than reason and are therefore of opinion that the court below did not abuse the discretion vested in it by refusing a new trial.

The judgment is affirmed.