## Laub, Appellant, *v.* Philadelphia R. T. Co.

Argued October 14, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Louis Wagner,* for appellant.

*Warwick Potter Scott,* and with him *John J. K. Caskie,* for appellee.

Opinion by Gawthrop, J., December 12, 1929:

Plaintiff alleged that while she was standing on the platform of one of defendant's cars and was in the act of getting off after it had been brought to a stop, it made a sudden and violent movement and came to a sudden ·and violent stop; that she had no notice or warning that the car would be so ·suddenly and violently started and stopped; and that in consequence thereof she was thrown to the floor and injured. At the trial the court entered a non-suit and from the refusal to strike it off we have· this appeal.

In her account of the occurrence plaintiff said that the car was "a one-man trolley car;" that she was sitting near the front door "on the right hand side as you go out ...... As I was getting off that car, just as I stepped down on the platform and the conductor gave me—I handed him my fare and he gave me two passes—that is for my sister and myself. Just as I was—the car gave a jolt just as I was going to get

off and the motorman who had handed me my passes, turned and said 'wait' and I was down on the platform ...... The car—it seemed to give a sudden jerk ...... I was just about to get off and the car gave a sudden move. Q. How far did the car move? A. Well, it seemed like a foot. Q. Had anyone gotten off the car before you? A. Yes, there was somebody got off, but I don't know just how many. Q. Was the trolley car standing at the time? A. It was standing. Q. Tell us everything you remember as to the persons ahead of you and who got off the car? A. Well, as I remember they were getting off and I paid my fare, and was about to get off when the car gave a jerk and I fell. That is all I do remember until I was picked up. Q. Where was the motorman standing at this time. A. He was facing me. Q. On the platform? A. Yes, on the platform, and I was on the platform. Q. As the car gave a jerk what did he do? A. He turned to me and said, 'wait.' He turned his face to me and went to his brake on the car. Q. How was the grade of the ground at the place where the trolley car stopped. A. It is a down grade. Q. In what direction on this grade was the movement of the car when it started with a jerk, as you have described before. A. Down grade. Q. When this jerk occurred and you fell what part of the car did you fall on? A. On the platform, right by the door. I struck my back on the step—on the step that leads down onto the platform."

The ground on which the non-suit was entered was that "before a plaintiff has a right to recover in these jerk and jolt cases it becomes necessary for that plaintiff to submit to you members of the jury evidence that that jolt or that jerk has been a sudden, unusual and extraordinary one ...... There must be some evidence of a falling of other passengers by reason of this sudden, unusual and extraordinary jolt. We have no such evidence in this case."

In our view the learned trial judge fell into error when he entered the non-suit, because he applied to the case the principles of law which have been applied in a line of cases in which the negligence charged, and sought to be proved, consisted of an unusual or extraordinary jolting of a moving car. (See Harrar v. P. R. T., 92 Pa. Superior Ct. 242, and cases therein cited.) We regard the statement of claim and the plaintiff's evidence as calling for the application of the principles of law announced in the line of cases in which the negligence consisted of the premature starting of the car. When a trolley car is brought to a full stop for the purpose of permitting a passenger to alight and the passenger is in the act of moving off of the car, a sudden starting of the car without warning is evidence of the company's negligence, and the extraordinary violence of the movement need not be established. Cars must be stopped for a sufficient time to give passengers a reasonable opportunity to alight and the premature starting of a car with a sudden jerk while a passenger is in the act of alighting therefrom, and that act is or should be known by those in charge of the car, is negligence: Hassan v. Reading Co., 89 Pa. Superior Ct. 592; Montalini v. Penna. Co., 256 Pa. 249; Bockelcamp v. Lackawanna and Wyoming Valley R. R. Co., 232 Pa. 66; Walthour v. Pa. R. R. Co., 40 Pa. Superior Ct. 252, and cases there cited. It is true that in these cases the sudden jerk was caused by the application of steam on a steam railway, and the learned counsel for appellant would distinguish them from the case on that ground, but on principle it cannot be done. It is earnestly contended also by counsel for defendant that in each of the cases cited by appellant, in which the negligence charged was the premature starting of the car, the passenger was just stepping from the car to the street or platform. It is sufficient answer to state that in Hassan v. Reading

Co., supra, the injured passenger was standing on the rear platform of a car of a train which had stopped to discharge passengers at a station, when the sudden jerking of the train caused the door to close on her hand. It was held in Picard v. Ridge Avenue Ry. Co., 147 Pa. 195, that it would seriously inconvenience the travelling public to hold that the car should come to a dead stop until every passenger who gets on is seated; and, as we stated in Harrar v. P. R. T. Co., supra, the general rule seems to be that it is not negligence to start a car after the passenger is fully and fairly upon it. But there is a difference, well recognized in the cases, between the case in which the passenger is fully and fairly upon the car, which he has just boarded, and the case in which a car has stopped to discharge passengers and they are in the act of leaving it. Our common experience teaches us that in the former case the passenger must anticipate that the car may start before he is seated, and that the movement may be abrupt. In the latter case the passenger has the right to assume that it will remain stationary until those who are being discharged have an opportunity to alight, and its sudden movement is unexpected. From the evidence of plaintiff, the jury could find that her injury resulted from a sudden and unexpected movement of the car down the grade on which it was standing, or from the sudden stopping after this movement; and that the brakes on the car were not adequate, or the operator had not applied them with sufficient force to hold the car stationary on the grade on which it was stopped. The evidence made out a prima facie case against defendant, which the latter was required to meet.

The order refusing to take off the nonsuit is reversed, with a procedendo.