## Wood *v.* P. R. R. Co., Appellant.

Argued October 3, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Philip Price,* and with him *Barnes, Biddle & Myers,* for appellant, cited: Delaney v. B. R. & P. Ry. Co., 266 Pa. 122; Forte v. Markle Co., 258 Pa. 194; L'Hommedieu v. D. L. & W. R. R. Co., 258 Pa. 115.

*Maurice G. Belknap,* for appellee, cited: Borden v. Lehigh Valley R. R. Co., 76 Pa. Superior Ct. 517; Stankowez v. Balt. & O. R. R. Co., 62 Pa. Superior Ct. 125.

OPINION BY PARKER, J., February 1, 1934:

The plaintiff, a passenger for hire, brought this action in trespass against the defendant corporation, a common carrier, to recover damages for personal injuries sustained by him as he entered one of the coaches of the defendant. Judgment was entered for plaintiff on a verdict by a jury, and the defendant has appealed to this court, assigning as error the refusal of the defendant's motions for a new trial and for judgment n. o. v.

The only person who testified as to the circumstances of the accident was the plaintiff, and the pertinent part of his testimony was as follows: "I entered the rear door on the rear platform next to the last coach and as I stepped up, went up the steps, one of the brakemen passed through from that coach to the last coach and I have a recollection of another

passenger preceding me in there and between him and me and my own entrance the brakeman passed through the open doorway, going from the next to the last coach into the last coach ...... I was over the door sill and the train started, and the doors came to, with a bang and came too quick for me to step out of the way, and I raised my hand, I had a brief case in my left hand and I had some blue prints under my right arm and I was raising my hand to unbutton my overcoat, had my hand part way up which is a regular habit as I entered the train. The starting of the train staggered me like, I didn't go on the floor but it staggered me towards the left and I had my brief case in my hand considerable weight in it, and the door caught my right hand and the latch box the middle part of the latch jabbed in on this finger.'' There was a severe injury to a finger of plaintiff's right hand. The allegations of negligence were a failure ''to have the door of said coach properly fastened and held back so that it could not slam to as it did when said train started,'' and ''in causing said train to start in such a manner as to cause the said door to slam or close'' with force and violence. There was not any evidence that the train was started with an unusual or extraordinary jerk or that there was any defect in the equipment, the door or the catch which held the door open when that position was desired. There was affirmative evidence on the part of the defendant that there was not any defect in the door or catch.

The plaintiff insists that on the facts shown by him a rebuttable presumption of negligence arose which entitled him to go to a jury. Mr. Justice KEP-HART, in the case of Orms v. Traction Bus Co., 300 Pa. 474, 150 A. 897, after referring to the general rule with relation to presumption of negligence in the case of carriers, said (p. 476): '' 'No presumption of negligence arises merely from the fact that the plaintiff

was injured while a passenger.' *The rule is limited by the manner in which the passenger received his injury.''* (Italics ours.) This is perhaps as definite as the exception may be stated in general terms, although we have numerous guides in the decided cases and are required to keep in mind the reason for the general rule, which is that the carrier is bound to the highest degree of care in handling its passengers and the construction of the road and cars and their management and care are subjects peculiarly within the knowledge of the carrier and with which the passenger has no means of becoming familiar: Herstine v. L. V. R. R. Co., 151 Pa. 244, 25 A. 104. "In nearly every case in which the rule under consideration has been applied, it will be found that the injury complained of was shown to have resulted from breaking of machinery, collision, derailment of cars, or something improper and unsafe in the appliances of transportation or in the conduct of the business and not from any cause wholly disconnected therewith": P. R. R. Co. v. MacKinney, 124 Pa. 462, 469, 17 A. 14. In other words, there has usually been shown in such cases a defect in equipment or operation. It is not sufficient to show an injury and that some part of the equipment had a part in the accident without any evidence showing a defect in construction or operation or facts from which such defect or dereliction might be inferred. This is well illustrated by the case of Farley v. Phila. Traction Co., 132 Pa. 58, 18 A. 1090, where a passenger on a street railway tripped upon the sheathing of a wheel extending above the floor but leaving ample room to enter and leave the car. In that case the Supreme Court said (p. 64): "Without some evidence, tending to prove that the injury complained of resulted from the defendant company's negligence, the plaintiff had no right to ask that his case be submitted to the jury."

The case of Swink v. P. R. T. Co., 277 Pa. 220, 120 A. 827, is in point and sustains our conclusions that under the facts in the instant case no presumption of negligence arose, and the burden was on the plaintiff to show negligence. In that case, a passenger was directed to go forward from one trolley car to another car, and in passing from one car to the other she was struck by a folding door operated by an employe and which extended beyond the line of the car. The Supreme Court there held that the plaintiff was a passenger while walking from car to car, but further said (p. 222): "An injury to a passenger by the ordinary opening or closing of a car door, through the act of an employe of the carrier is not sufficient to charge the latter with negligence, as the presumption is such employe was acting within the proper line of his duty ....... The opening of the door was of itself an innocent and proper act and the motorman was not bound to anticipate so unusual an occurrence as a person walking within less than six inches of the blind side of a car, when there was a wide open space beyond. Conceding the motorman opened the doors, a conclusion only inferentially drawn, there is nothing to show it was a negligent act on his part." If there had been any presumption of negligence in such a case, judgment could not have been entered for the defendant as a matter of law as it was.

With these preliminary observations we will turn our attention to the evidence and the specific allegations of negligence alleged in the statement and depended upon by the plaintiff in this case, to wit, the starting of the train and the closing of the door. Bearing in mind the fact that there was not a scintilla of evidence that the car was started with an unusual or extraordinary jerk, was there any evidence of negligence to submit to a jury? Nothing may be predicated upon the mere starting of the car in the ordinary man-

ner: Delaney v. B. R. & P. Ry. Co., 266 Pa. 122, 109 A. 605. As we said in the case of Fornwalt v. Phila. R. T. Co., 65 Pa. Superior Ct. 559, 564: "It was incumbent on the plaintiff to show affirmatively that this jerk was not only unexpected by her, but was unusual and violent." He failed to so do. Also, see Rice v. Phila. R. T. Co., 214 Pa. 147, 63 A. 419; Sanson v. Phila. R. T. Co., 239 Pa. 505, 86 A. 1069; Kleine v. Pittsburgh Rys. Co., 252 Pa. 214, 97 A. 395.

In considering the allegation of negligence with respect to the closing of the door, we find the same situation, for there was not any evidence that the door was closed in an unusual manner or that there was anything defective in the operation or construction of the door or catch or that any employe of the defendant company was responsible for its movement. The door closed upon plaintiff's finger, but there is not any evidence as to show even how the door was set in motion. It may have come from any one of a number of causes. By way of argument and not as binding on the plaintiff, we refer to the fact that the conductor of the car testified that about four minutes after the accident occurred and when it was called to his attention by the plaintiff, he found two persons sitting on a seat running lengthwise and immediately behind the door. It is possible that these persons may have closed the door. It was a February day and the plaintiff states that he had on an overcoat which he unbuttoned when he entered the train. A natural position for a door under such circumstances would be closed and a passenger, to stop the drafts, might have closed it. We are left to a pure speculation as to the cause of the closing of the door. As is pointed out in a case involving somewhat the same facts in another state (Christensen v. Oregon Short Line R. R. Co., 35 Utah 137): "If we bear in mind that a door swings upon hinges, that it is intended to open and

close for the use of passengers to enter and leave the car, how can any inference of negligence arise merely because a door closes at a time when it was not expected to do so by a particular person, and for some unexplained reason?'' It does not follow that because car doors usually are provided with a catch to hold the door open while passengers are passing in or out of the car and because the door closes the catch was defective. We may not draw such an inference unless it appears that the door was, in fact, placed back in contact with the catch and was not held in place. It would also be unreasonable to assume that the appellant was negligent in not seeing that the door was placed back sufficiently to interlock with the catch. Car doors, as a matter of common knowledge, are not entirely under the control of the carrier but are used at pleasure by the passengers. If the defendant were to be held liable in a case such as this, it would be necessary for the operators of railway trains to have employes at each door, keeping a constant watch. Such a requirement would be unreasonable.

In two cases decided by the Supreme Court, facts somewhat similar to those in the instant case were involved. In L'Hommedieu v. D. L. & W. R. R. Co., 258 Pa. 115, 101 A. 933, a passenger on a railroad day coach left his seat while the train was in motion before reaching the station of his destination, and while standing in the vestibule with his fingers on the jamb of the door, the conductor shut the door on his fingers, and it was held: ''He must be charged with having assumed the risk of what happened, in the absence of evidence that the conductor actually saw the position of his fingers or acted wantonly, and in an action against the railroad company for the recovery of damages for the injury so sustained, a compulsory nonsuit was properly entered ...... We pass over the question of contributory negligence altogether,

and we hold that the nonsuit was properly allowed for lack of proof establishing negligence on the part of defendant's employee." In the case of Polis v. P. & R. Ry. Co., 273 Pa. 591, 117 A. 415, the plaintiff was about to alight from the platform of a standing train and placed one of her hands on the door jamb on the car in which she was riding. The door closed and injured her hand, and the only evidence as to the cause of the door closing was a statement by plaintiff that a man whom she described as the conductor opened the door after the hand was pinched and said: "I am sorry; the door slipped out of my hand." The Supreme Court said: "From this you might infer he had the door knob in his hand, or the frame of the door in his hand, intending to close it, that he hadn't gotten hold of it sufficiently, and it slipped out of his fingers. Could you infer negligence on the part of the conductor, assuming he was the conductor, from that fact? To do so in the absence of evidence as to how long the hand had been on the door jamb you would have to infer that he knew plaintiff's hand was there, or he ought to have known it, or that, in the exercise of his duty, as custodian of the train, so to speak, and caretaker of the passengers, he should have known some person was out on the platform with her hand around the door frame and in the socket or groove where the door would come. I do not think the law justifies us in putting such a duty upon the crew of a train, and the decisions of our courts are to that effect."

The two cases relied upon by the appellee in support of the judgment are distinguishable from the instant case. In Hassan v. Reading Co., 89 Pa. Superior Ct. 592, the plaintiff was a passenger on defendant's railroad. The train was brought to a stop at her destination and she was the last of a number of passengers who were disembarking. When she was stand-

ing on the platform holding a handle bar, about to leave the train the brakeman called "All aboard," the car was started with a sudden jerk, and she was thrown back into the doorway in such a position that her hand was caught in a door which was swinging. A verdict for the plaintiff was sustained. We there said (p. 596): "Trains must be stopped at stations for a sufficient length of time to give passengers a reasonable opportunity to alight and the premature starting of a train with a sudden jerk while a passenger is in the act of alighting therefrom, and that act is or should be known by those in charge of the train, is negligence: Montalini v. Penna. Co., 256 Pa. 249, 100 A. 806; Bockelcamp v. Lackawanna and Wyoming Valley Railroad Co., 232 Pa. 66, 72, 81 A. 93, and cases there cited." In the instant case there is not any evidence showing negligence in starting the train. In fact, the plaintiff made a statement in writing which he admitted making and did not contradict, as follows: "The train made the usual start, without any unusual jerk, as otherwise I would have been taken off my balance." A railroad company is not obliged to see that every passenger is in his seat before a train is started. In the Hassan case, negligence was shown; in the instant case it was not. In the case of Miller v. P. R. R. Co., 303 Pa. 524, 154 A. 924, the plaintiff, a passenger, was passing from one coach to another when the train was in motion and was thrown from the train by a sudden lurch. The train was provided with vestibule doors for the very purpose of permitting passengers to move from coach to coach with safety when the train was in motion. An employe of the company had negligently allowed the vestibule door, or trap door, to remain open, and the negligence submitted to the jury was the failure to close the door.

The judgment of the lower court is reversed and here entered for the defendant.